Craig H. Howe (#7552)
James W. Anderson (#9829)
**MILLER GUYMON, P.C.**
165 South Regent Street
Salt Lake City, Utah 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
e-mail: howe@millerguymon.com
anderson@millerguymon.com

Attorneys for David Miller, Chapter 7 Trustee

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **In re:**<br><br>**ATLAS MARKETING GROUP, L.C.,**<br><br>**Debtor.** | **Bankruptcy Case No. 08-20225**<br>**Chapter 7**<br><br>**Judge Joel T. Marker** |
| **DAVID MILLER,** in his capacity as Chapter 7 Trustee for Atlas Marketing Group, L.C.**,**<br><br>**Plaintiff,**<br><br>v.<br><br>**DOUG ROBINSON,** an individual; **JEFFREY MENDEZ,** an individual; **CASEY BAUGH**, an individual; and **DAVID FORCE**, an individual,<br><br>**Defendants.** | **COMPLAINT**<br><br>**Adversary Proceeding No._____**<br><br>**[Filed Electronically]** |

Plaintiff, David Miller ("Trustee" or "Plaintiff"), in his capacity as Chapter 7 Trustee for

Atlas Marketing Group, L.C. ("Debtor"), hereby complains and alleges against Doug Robinson

("Robinson"), Jeffrey Mendez ("Mendez"), Casey Baugh ("Baugh"), and David Force ("Force") (collectively, "Defendants"), as follows:

## JURISDICTION AND VENUE

1. This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure, Sections 547(b), 548, and 550 of Title 11 of the United States Code (the "Bankruptcy Code"), as well as applicable state law, to recover avoidable transfers and other payments made by the Debtor to or on behalf of Defendants and other damages.

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

3. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

4. This District is the proper venue for this proceeding pursuant to 28 U.S.C. § 1409.

## PARTIES

5. On January 15, 2008, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

6. On December 1, 2009, the Court entered an order converting the case to one under Chapter 7 of the Bankruptcy Code.

7. On December 4, 2009, the Trustee was duly appointed as the trustee of the Debtor's Chapter 7 case.

8. Robinson is an individual who, upon information and belief, resides in Cache County, Utah.

9. Mendez is an individual who, upon information and belief, resides in Utah County, Utah.

10. Baugh is an individual who, upon information and belief, resides in Utah County, Utah.

11. Force is an individual who, upon information and belief, resides in Cache County, Utah.

## FACTUAL BACKGROUND

12. The Debtor operated a Dish Network sales and distribution business pursuant to a franchise agreement between the Debtor and Dish Network.

13. During portions of the twelve (12) month period prior to the petition date, Robinson was an officer of the Debtor, serving as the Debtor's president.

14. During the relevant time period for all transfers set forth herein, Defendants were officers of the Debtor.

### Excess Compensation

15. Robinson had a compensation agreement with the Debtor wherein Robinson was compensated based solely on the sales performance of the Debtor during the year (the "Compensation Agreement").

16. Pursuant to the Compensation Agreement, Robinson would receive draws each month during the year based on the expected sales performance of the Debtor, and there would be a true-up towards the end of the year after the summer sales season. If, as a result of the true-up analysis, Robinson was entitled to additional compensation, the Debtor would be obligated to pay such compensation. Correspondingly, if the true-up analysis showed that Robinson's draws exceeded the actual compensation to which Robinson was entitled, Robinson would be obligated to pay the Debtor the excess sum.

17. In 2007, Robinson took compensation draws in the amount of $10,000, twice a month. However, pursuant to the agreed-upon true-up process, it was determined that Robinson received excess compensation in the amount of $30,000.00 (the "Excess Compensation"), because the Debtor's sales performance for 2007 did not justify the amount of draws received by Robinson.

18. Despite demand, Robinson has failed and refused to pay the Excess Compensation to the Debtor.

**Preferential Transfers**

19. Robinson had two American Express cards in Robinson's name, for which the Debtor made the following payments to American Express on Robinson's behalf, in the total amount of $310,040.24:

    a) Payment in the amount of $92,168.70 on June 1, 2007;

    b) Payment in the amount of $13,188.16 on June 1, 2007;

    c) Payment in the amount of $91,054.63 on June 28, 2007;

    d) Payment in the amount of $5,868.67 on July 5, 2007;

    e) Payment in the amount of $346.28 on July 31, 2007;

    f) Payment in the amount of $107,388.80 on August 31, 2007; and

    g) Payment in the amount of $25.00 on September 29, 2007.

20. Mendez had an American Express card in his name, for which the Debtor made the following payments to American Express on Mendez's behalf, in the total amount of $577,403.20:

    a) Payment in the amount of $168,936.10 on June 21, 2007;

    b) Payment in the amount of $178,126.70 on July 5, 2007;

    c) Payment in the amount of $139,314.60 on August 22, 2007;

    d) Payment in the amount of $1,943.99 on September 20, 2007;

    e) Payment in the amount of $8,333.00 on September 10, 2007;

    f) Payment in the amount of $8,333.00 on September 25, 2007;

    g) Payment in the amount of $10,550.97 on September 27, 2007;

    h) Payment in the amount of $51,034.84 on September 27, 2007;

    i) Payment in the amount of $7,830.00 on September 27, 2007;

    j) Payment in the amount of $2,500.00 on September 28, 2007; and

    k) Payment in the amount of $500.00 on October 16, 2007.

21. Baugh had an American Express card in his name, for which the Debtor made the following payments to American Express on Baugh's behalf, in the total amount of $524,365.10:

    a) Payment in the amount of $143,586.50 on July 16, 2007;

    b) Payment in the amount of $79,513.60 on July 16, 2007;

    c) Payment in the amount of $133,498.60 on September 28, 2007;

    d) Payment in the amount of $165,766.40 on September 28, 2007; and

    e) Payment in the amount of $2,000.00 on September 28, 2007.

22. Force had an American Express card in his name, for which the Debtor made the following payments to American Express on Force's behalf, in the total amount of $11,955.00: payment in the amount of $11,955.00 on September 27, 2007. The preferential transfers set forth in paragraphs 19-22 of this Complaint are referred to herein as the "Preferential Transfers."

5

**Actions With Pinnacle Security**

23.     In and before October 2007, it was clear to Defendants and others that the Debtor was in a precarious financial position.

24.     Several payroll payments to the Debtor's employees had bounced during this period of time.

25.     On October 16 and 17, 2007, the Debtor's owner, Mr. Wade Sleater, discussed a transaction with Mr. Chris Monday, owner and officer of Pinnacle Security, LLC ("Pinnacle"). Under this transaction, Pinnacle would loan the Debtor approximately $1,500,000.00 to enable the Debtor to cover the bounced payroll checks and pay other debts, and the Debtor would use a substantial portion of its sales staff to sell products for Pinnacle (the "Pinnacle Deal").  Pursuant to the Pinnacle Deal, the Debtor would maintain a sufficient sales staff to continue to meet its obligations under its contract with Dish Network and receive the approximately $8,000,000.00 in commissions owed to the Debtor by Dish Network, and the Debtor would become a regional sales force for Pinnacle, which would pay the Debtor a commission override on the sales of the Debtor's sales force.

26.     By the end of Mr. Sleater's discussions with Mr. Monday, on October 17, 2007, Pinnacle had agreed to the Pinnacle Deal, and Mr. Monday had instructed Mr. Sleater to meet with Pinnacle's attorney the next morning to sign a document memorializing the agreed-upon terms.

27.     On the evening of October 17, 2007, Mr. Sleater called Robinson, told him about the Pinnacle Deal, and instructed him to meet with Mr. Monday and others at Pinnacle the next morning to discuss plans for the transition.

6

28. However, upon information and belief, Robinson met with Mr. Monday on October 18, 2007, and convinced Mr. Monday to not complete the Pinnacle Deal with the Debtor. Rather, Robinson enticed Mr. Monday to break the Pinnacle Deal and simply hire Robinson and other officers of the Debtor to be employees of Pinnacle, and then Robinson and these other officers of the Debtor would convince the Debtor's sales force to leave the Debtor and work directly for Pinnacle.

29. When Mr. Sleater arrived at Pinnacle's offices on the morning of October 18, 2007, he found Robinson in Mr. Monday's office making a presentation at the white board, which Robinson quickly covered when Mr. Sleater walked in.

30. Later in the day on October 18, 2007, Mr. Sleater received a phone call from Robinson instructing Mr. Sleater to meet back at Pinnacle's offices.

31. Mr. Sleater and Robinson then met at Pinnacle's offices where Robinson explained to Mr. Sleater that Pinnacle refused to complete the Pinnacle Deal if Mr. Sleater and the Debtor were involved.

32. Mr. Sleater then called Mr. Monday to confront him about this change, and Mr. Monday told Mr. Sleater that Robinson had explained to Mr. Monday that Robinson and the Debtor's sales force would not be willing to work for Pinnacle if Mr. Sleater and the Debtor were involved.

33. Robinson then quit his employment with the Debtor and enticed the Debtor's other officers and sales personnel to quit as well. Several of the sales agents went to work for Pinnacle, and others went to work for a competitor of Pinnacle.

34. Upon information and belief, Mendez, Baugh, and Force participated with Robinson in soliciting the Debtor's sales personnel to quit their employment with the Debtor to work for Pinnacle.

35. As of the date of this Complaint, Robinson is still employed by Pinnacle.

## FIRST CAUSE OF ACTION
**(Recovery of Avoidable Preference Payments Pursuant to 11 U.S.C. § 547 – All Defendants)**

36. Plaintiff incorporates all previous allegations as if fully set forth herein.

37. The Preferential Transfers described above constitute transfers of property of the Debtor to or for the benefit of Defendants, who were creditors and insiders of the Debtor.

38. The Preferential Transfers were made for or on account of antecedent debts allegedly owed by the Debtor to Defendants.

39. The Debtor was presumptively and actually insolvent at the time of the Preferential Transfers.

40. The Preferential Transfers were made within 12 months of the Petition Date.

41. By virtue of the Preferential Transfers, Defendants received more than they would have received if the Debtor's estate had been liquidated under Chapter 7, the Preferential Transfers had not occurred, and Defendants had received payments of the debts to the extent permitted by the Bankruptcy Code.

42. The Preferential Transfers constitute avoidable preferences pursuant to Section 547 of the Bankruptcy Code.

## SECOND CAUSE OF ACTION
**(Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. § 548 – Robinson)**

43. Plaintiff incorporates all previous allegations as if fully set forth herein.

8

44. Robinson entered into the Compensation Agreement with the Debtor, which was a binding and enforceable contract with Robinson.

45. Pursuant to the Compensation Agreement, Robinson was supposed to be compensated based on the sales performance of the Debtor.

46. However, in violation of the Compensation Agreement, Robinson received the Excess Compensation.

47. Payment of the Excess Compensation was a transfer of the Debtor's property, made within two (2) years before the Petition Date.

48. The Debtor received less than a reasonably equivalent value in exchange for the Excess Compensation.

49. The Debtor was insolvent on the dates the Excess Compensation was paid, or became insolvent as a result of paying the Excess Compensation.

50. The Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

51. The Debtor intended to incur, or believed that it would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

52. The Debtor paid the Excess Compensation to Robinson, who was an insider, pursuant to an employment contract and not in the ordinary course of business.

53. The Excess Compensation constitutes an avoidable transfer under 11 U.S.C. § 548(a).

## THIRD CAUSE OF ACTION
**(Recovery of Preferential Transfers Pursuant to 11 U.S.C. § 550 – All Defendants)**

54. Plaintiff incorporates all previous allegations as if fully set forth herein.

55. Robinson was the initial transferee of the Excess Compensation, and all Defendants were the initial transferees of their respective shares of the Preferential Transfers; or Robinson was the immediate or mediate transferee of such initial transferee or the person for whose benefit the Excess Compensation was made, and all Defendants were the immediate or mediate transferees of such initial transferee of their respective shares of the Preferential Transfers or the persons for whose benefit the Preferential Transfers were made.

56. Unless otherwise determined after a trial, pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Defendants their respective shares of the Preferential Transfers in the following principal amounts: (a) Robinson ($310,040.24); (b) Mendez ($577,403.20); (c) Baugh ($524,365.10); and (d) Force ($11,955.00), plus interest thereon to the date of payment and the costs of this action.

57. Further, Plaintiff is entitled to the Excess Compensation from Robinson in the principal amount of approximately $30,000.00, plus interest thereon to the date of payment and the costs of this action.

## FOURTH CAUSE OF ACTION
**(Disallowance of Claims Pursuant to 11 U.S.C. § 502(d) – All Defendants)**

58. Plaintiff incorporates all previous allegations as if fully set forth herein.

59. Robinson was the initial transferee of the Excess Compensation, and all Defendants were the initial transferees of their respective shares of the Preferential Transfers; or Robinson was the immediate or mediate transferee of such initial transferee or the person for

whose benefit the Excess Compensation was made, and all Defendants were the immediate or mediate transferees of such initial transferee of their respective shares of the Preferential Transfers or the persons for whose benefit the Preferential Transfers were made.

60. Pursuant to 11 U.S.C. § 502(d), any claims of Defendants against the Debtor must be disallowed until such time as Defendants pay to Plaintiff an amount equal to their respective shares of the aggregate amount of the Preferential Transfers and, for Robinson, the full amount of the Excess Compensation, plus interest thereon and costs.

## FIFTH CAUSE OF ACTION
### (Breach of Contract -- Robinson)

61. Plaintiff incorporates all previous allegations as if fully set forth herein.

62. The Compensation Agreement constitutes a valid and enforceable contract between the Debtor and Robinson.

63. The Debtor has complied with its obligations under the Compensation Agreement.

64. Robinson caused the Debtor to pay the Excess Compensation in violation of the Compensation Agreement.

65. Robinson's conduct constitutes a material breach of the Compensation Agreement.

66. As a direct and proximate result of Robinson's material breach of the Compensation Agreement, the Debtor has been damaged in an amount to be proven at trial.

67. Plaintiff is entitled to a judgment in its favor and against Robinson in the amount of the Excess Compensation, plus other damages and interest in an amount to be proven at trial.

11

## SIXTH CAUSE OF ACTION
### (Breach of Fiduciary Duty – All Defendants)

68. Plaintiff incorporates all previous allegations as if fully set forth herein.

69. As officers of the Debtor, Defendants owed the Debtor fiduciary duties of loyalty and to act in good faith in the Debtor's best interests.

70. Upon information and belief, Robinson enticed or convinced Pinnacle to breach the Pinnacle Deal, which would have greatly benefitted the Debtor, and to enter into a new deal with Defendants to entice the Debtor's sales force to switch their employment to Pinnacle.

71. Upon information and belief, Mendez, Baugh, and Force participated with Robinson in soliciting the Debtor's sales personnel to quit their employment with the Debtor to work for Pinnacle.

72. Defendants' actions constitute gross negligence and/or willful misconduct, causing injury to the Debtor and misappropriating from the Debtor the corporate opportunity to participate in the Pinnacle Deal.

73. By their actions, Defendants breached their fiduciary duties to the Debtor.

74. As a direct and proximate result of Defendants' breaches of their fiduciary duties, the Debtor was injured by, among other things, the loss of its sales force, the loss of its Dish Network contract, and the loss of the Pinnacle Deal.

75. The Debtor is entitled to a judgment in its favor and against Defendants in an amount to be proven at trial, including interest and costs.

## SEVENTH CAUSE OF ACTION
### (Conversion – All Defendants)

76. Plaintiff incorporates all previous allegations as if fully set forth herein.

77. In causing and/or facilitating the loss of the Pinnacle Deal, Defendants willfully interfered with the Debtor's property, without lawful justification, thereby depriving the Debtor of the use, possession, and benefit of the Pinnacle Deal.

78. The Debtor was entitled to the immediate use, possession, and benefit of the Pinnacle Deal at the time of the conversion set forth herein.

79. As a direct and proximate result of Defendants' conversion of the Pinnacle Deal, the Debtor has been damaged in an amount to be determined at trial, including interest and costs.

80. The Debtor is entitled to a judgment in its favor and against Defendant in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**
**(Constructive Trust – All Defendants)**

81. Plaintiff incorporates all previous allegations as if fully set forth herein.

82. Defendants' wrongful conduct as set forth above has resulted in unjust enrichment to Defendants.

83. Further, pursuant to Utah Code Ann. § 48-2c-807(2), Defendants are required to hold as trustees all profit and benefit derived by their unauthorized conduct.

84. The Debtor is entitled to an order imposing a constructive trust requiring Defendants to hold, for the benefit of the Debtor's estate, any profits or other property resulting from Defendants' wrongful conduct.

WHEREFORE, Plaintiff prays for the following relief:

I. On the First, Second (Robinson only), Third, and Fourth Causes of Action, for a judgment in favor of Plaintiff and against Defendants in an amount to be determined at trial, but not less than the total amount of that portion of the Preferential Transfers attributable to each of

the Defendants, the Excess Compensation (for Robinson only), interest, and costs, and an order denying any claims Defendants may have against the estate until so paid;

    II.    On the Fifth Cause of Action, for a judgment of damages in favor of Plaintiff and against Robinson for breach of the Compensation Agreement in an amount to be determined at trial, but not less than the total amount of the Excess Compensation, interest, and costs;

    III.    On the Sixth Cause of Action, for a judgment of damages in favor of Plaintiff and against Defendants, for breach of their fiduciary duties, in an amount to be determined at trial, with interest and costs;

    IV.    On the Seventh Cause of Action, for a judgment of damages in favor of Plaintiff and against Defendants, for conversion, in an amount to be determined at trial, with interest and costs;

    V.    On the Eighth Cause of Action, for an order imposing a constructive trust requiring Defendants to hold, for the benefit of the Debtor's estate, any profits or other property resulting from Defendants' wrongful conduct;

    VI.    For an award of attorneys' fees and costs as provided by law; and

    VII.    For such other and further relief as the Court deems warranted under the circumstances.

DATED this 14th day of October 2010.

    Miller Guymon, P.C.

    */s/ James W. Anderson*
    Craig H. Howe
    James W. Anderson
    Attorneys for David Miller,
    Chapter 7 Trustee

14